GUSTAV BORCKMANN, Appellant, *v.* THE TERRY CONSTRUCTION COMPANY, Respondent.

Master and servant — injury to workman engaged in work which he was ordered to do by foreman of defendant — when jury might have found that acts of foreman were acts of super-intendence and negligent, decision of Appellate Division reversing judgment for plaintiff is erroneous — when case must be remitted to Appellate Division to pass on the facts.

Upon examination of the record in an action to recover for injuries to a workman received in the performance of work which he was ordered to do by a foreman of the defendant, *held*, that the jury might have found from the evidence that the acts of the foreman in ordering a safeguard to a machine to be taken off and in thereafter ordering the plaintiff to operate the machine, were acts of superintendence, and that in the performance of such acts he was negligent; that the order of the Appellate Division reversing the judgment for the plaintiff, entered on the verdict of a jury, is erroneous and must be reversed, and that the case must be remitted to the Appellate Division to enable it to pass upon the ques-

tions of fact presented by the appeal from the order denying defendant's motion for a new trial made upon the minutes of the court.

*Borckmann* v. *Terry Construction Co.*, 157 App. Div. 661, reversed.

(Argued October 12, 1915; decided October 29, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 10, 1913, upon an order reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Seward Shanahan* for appellant. Swenson was a person in the employ of the defendant "exercising superintendence, whose sole or principal duty was that of superintendence." (*Guilmartin* v. *Solvay Process Co.*, 189 N. Y. 490; *Gallagher* v. *Newman*, 190 N. Y. 444; *Buckley* v. *Beinhauer*, 136 App. Div. 540, 541; 201 N. Y. 572; *Smith* v. *Milliken Bros., Inc.*, 200 N. Y. 21.) Swenson in directing that the pawl of the winch be taken out of contact with the cogwheel, and also in directing Borckmann to go to work upon the winch, was performing acts of superintendence within the meaning of the statute, and was guilty of negligence in the performing of said acts; at least the jury would be justified in finding such negligence. (*Faber* v. *City of New York*, 213 N. Y. 411; *Guilmartin* v. *Solvay Process Co.*, 189 N. Y. 490; *Gallagher* v. *Newman*, 190 N. Y. 444; *Buckley* v. *Beinhauer*, 136 App. Div. 540; 201 N. Y. 572; *McGlynn* v. *Penn. Steel Co.*, 144 App. Div. 343; 205 N. Y. 574; *Wittgren* v. *Wells Bros. Co.*, 214 N. Y. 159; *Middleton* v. *Whitridge*, 213 N. Y. 499; *Buckley* v. *Beinhauer*, 136 App. Div. 540; 201 N. Y. 572.)

*E. Clyde Sherwood, William B. Davis* and *Amos H. Stephens* for respondent. Swenson, in assisting the other men in the actual work of operating the winch, was

not exercising superintendence, but was engaged as a fellow-servant in performing a detail of the work; the shifting of the dog or pawl one way or the other was a detail of the simplest kind connected with the operation of the winch, and for Swenson's negligence, if any, in respect thereto, the defendant is not liable. · The complaint, therefore, should have been dismissed upon the defendant's motion at the trial, and this disposition of the case by the Appellate Division was correct.  (*Guilmartin* v. *Solvay Process Co.*, 189 N. Y. 490; *Hope* v. *Scranton, etc., Coal Co.*, 120 App. Div. 595; *Bannan* v. *R. R. Co.*, 112 App. Div. 552; *Dolan* v. *Safe Co.*, 105 App. Div. 366; *Shute* v. *City of N. Y.*, 149 App. Div. 758; *Kujava* v. *Irving*, 122 App. Div. 375; *Droge* v. *Robbins. Co.*, 123 App. Div. 537; *Utess* v. *R. R. Co.*, 204 N. Y. 324; *Kwiatkowski* v. *Nichols Copper Co.*, 152 App. Div. 663; *Larson* v. *B. H. R. R. Co.*, 134 App. Div. 679; *Shanley* v. *City of New York*, 149 App. Div. 187; *Abrahamson* v. *General S. & C. Co.*, 112 App. Div. 318; *Pratt* v. *McKie*, 135 App. Div. 752.)  The evidence wholly failed to show that Swenson was guilty of a negligent act. (*Stringham* v. *Hilton*, 111 N. Y. 188; *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31; *Burke* v. *Witherbee*, 98 N. Y. 562; *Ozogar* v. *Pierce*, 134 App. Div. 800; *Scott* v. *R. R. Co.*, 136 App. Div. 347; *Martin* v. *Degnon Const. Co.*, 127 App. Div. 85; *Mattson* v. *Phœnix Const. Co.*, 135 App. Div. 234; *Maue* v. *Erie R. R. Co.*, 198 N. Y. 221; *Johnson* v. *City of New York*, 208 N. Y. 77.)

CUDDEBACK, J.  The action is to recover damages for personal injuries resulting from the defendant's negligence.  The accident in which the injuries were sustained happened on September 21, 1909, at Raritan, N. J. There was in force at that time in New Jersey an act similar to chapter 600, Laws of 1902, of this state, extending the liability of employers for injuries suffered by their employees.

The plaintiff was one of a gang of five men employed by the defendant to install a pump in a building at Raritan. One Swenson was the foreman of the gang. The men were engaged in moving along the ground a heavy piece of machinery, weighing some four tons, part of the pump. This piece of machinery rested on skids placed on wooden rollers which ran on planks laid on the ground. The power to move the load was applied by a rope fastened to the skids at one end and at the other end, about 150 feet away, wound around the barrel of a winch. The winch was operated by a crank or handle, which was turned by some member of the gang. Along side the barrel of the winch and revolving with it was a cogwheel, and attached to the frame of the winch was a dog or pawl, which, when thrown forward, engaged with the cogwheel and prevented the barrel and crank of the winch from turning backward. When the pawl was thrown out so as not to touch the cogwheel, the crank might turn back with considerable force.

On the day of the accident the plaintiff and another of the gang were at work shifting the rollers and planks under the skids, and the foreman, Swenson, and two others were at the winch. They were taking turns in operating the crank and holding taut the rope which passed around the barrel of the winch, Swenson taking his turn with the others. The men at the skids, by means of a whistle, signaled to the men at the winch when to stop and when to start pulling again. There was considerable noise about the place and the pawl striking on the cogwheel added to the noise so that the signals given by the whistle could not be distinctly heard at the winch.

About fifteen minutes before the accident Swenson, the foreman, who was then turning the crank, told the man who was holding the rope to turn back the pawl, and this the man did. Shortly thereafter Swenson told the plaintiff to go from the skids over to the winch and turn the crank. The plaintiff did so and Swenson went

away to attend to some other work. The plaintiff had turned for only about a minute when the crank flew back and hit him in the eye, causing the injuries sued for. It is not very clear what caused the crank to fly back, but if the pawl had been thrown forward, the cogwheel could not have turned back more than three-fourths of an inch. When Swenson directed the plaintiff to go over to the winch and turn the crank he did not inform him that the pawl was not in operation.

Swenson was the general superintendent of the defendant, which is a New York corporation. He was sent out from New York by the defendant to install the pump at Raritan, and to do whatever in his judgment should be done. He selected the men who were to accompany him and the appliances which he would require for the work. The men in the gang were under his control; he told them where to work, and when to work, and what particular work they were to do on the job.

The Appellate Division reversed a judgment for the plaintiff entered on the verdict of the jury, and dismissed the complaint. We are to see, therefore, whether the facts proved, giving the plaintiff the favorable construction to which he is entitled, make out a cause of action. (*Faber* v. *City of New York*, 213 N. Y. 411.)

The statutes both of this state and of the state of New Jersey declare that an employee shall have a cause of action against his employer if injured by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence. There can be no doubt that Swenson was a superintendent within the contemplation of the statute. The charge against him is that he was negligent in directing that the pawl of the winch be thrown back, and in directing the plaintiff to leave the skids and go to work on the winch when the pawl was disconnected, and that these acts of Swenson were acts of superintendence.

When Swenson directed that the pawl be thrown back he did it to facilitate and expedite the work in hand by rendering the necessary signals more audible, and by enabling the men at the skids and at the winch to work in harmony.   By throwing back the pawl Swenson also rendered the winch somewhat unsafe and dangerous to the man engaged in turning the crank.   It seems hardly likely that a mere employee would assume to do that much, as a detail of the work, with Swenson present. The act of Swenson had an element of supervision and command, at least the jury might have so found.

The case is within the rule laid down in *Gallagher* v. *Newman* (190 N. Y. 444, 447) where it is said: "This court may be regarded as having formulated under this act (Employers' Liability Act) the principles that an employer is not liable for the negligent act of an employee simply because the latter ordinarily is engaged in discharging duties of superintendence, nor, on the contrary, is the employer exempted from liability for such act simply because it is one which may be described in some sense as 'a detail of the work;' but the employer is liable or not accordingly as the negligent act is one of or pertaining to superintendence, or is one *which is the subject of performance by ordinary, subordinate employees, and including no element of superior duty, supervision or command.*"

. The other branch of the case seems still plainer.   When Swenson directed the plaintiff to cease work at the skids and take his place at turning the crank of the winch he was exercising an act of superintendence.   As Swenson testified, it was his duty to tell the men "where they were to work, and when they were to work, and what particular work they were to do on the job."   That is what he was doing when he gave his directions to the plaintiff. Swenson did not tell the plaintiff when he ordered him to work at the winch that the pawl had been thrown off the cogwheel, and the plaintiff began to turn the crank in

ignorance of that fact. It is fair to say that if the pawl had been resting on the cogwheel the plaintiff would not have been injured.

The jury might have found that Swenson was negligent in throwing back the pawl, and that he thereby rendered the winch temporarily unsafe, and that he was negligent in assigning the plaintiff to work at the winch while it was thus unsafe, and that his acts in that regard were acts of superintendence.

I recommend that the judgment appealed from be reversed and that the case be remitted to the Appellate Division to enable it to pass upon the questions of fact presented by the appeal from the order denying the defendant's motion for a new trial made upon the minutes of the trial court, with costs to the appellant in this court.

WILLARD BARTLETT, Ch. J., CHASE, CARDOZO, SEABURY and POUND, JJ., concur; COLLIN, J., dissents.

Judgment reversed, etc.