Eva Dekowski, as Administratrix, etc., of Michael Dekowski, Deceased, Appellant, v. County of Montgomery, Respondent.

Third Department, April 29, 1942.

*Joseph N. Barnett,* for the appellant.

*Jerome S. Lovenheim,* for the respondent.

Bliss, J. The Miller's Corners-Braman's Corners county highway in the counties of Schenectady and Montgomery runs in a generally north and south direction. The southerly portion lies in Schenectady county and the northerly section in Montgomery county. In Schenectady county it is a macadam highway fifteen feet wide and in Montgomery county is macadamized to the width of ten and one-half feet. There is a culvert at the point where this highway crosses the county line. Approaching this culvert from the south the road runs down quite a grade, around a slight curve and into a dip, then rises over the culvert and drops into another dip immediately north of the culvert. In this northerly dip were two holes in the macadam pavement from two to five feet from the culvert and from four to five feet apart. The easterly was from three to four inches in depth, around three feet long and two feet wide, and the westerly from six to seven inches deep, one and one-half feet wide and two feet long. The macadam was gone out of them. As one witness expressed it, the macadam had " rotted out " and the holes were " very deep in the center." They

had existed for at least nine months and the county of Montgomery had not repaired them during that time. North of this dip the road proceeds up a slight grade for about forty feet.

About two-thirty P. M. on May 9, 1939, plaintiff's intestate, a young man thirty-seven years of age, was seen driving his 1931 Ford coupe in a northerly direction down this highway at a speed of from thirty-five to forty miles an hour. The car was seen to go down into the dip in the road and then rear up in the air as it hit the two holes. Then it proceeded for from seventy to one hundred feet with the left wheels on the grass on the west side of the road, veered back diagonally across the road to the east side into a bank and finally landed up against a tree. The driver's body flew up into the air through the top of the car and came down on the highway's shoulder just beyond. Tire marks on the highway after the accident began at the two holes, extended along the west side, one of them being out on the grass shoulder for from seventy to one hundred feet, ran diagonally over to the east side of the highway and stopped at the point where the car came to rest.

Upon proof of these facts, together with an offer to show that a previous accident had happened at the two holes, which proffer was ruled out, the trial court granted a nonsuit.

We believe that here was a situation sufficiently dangerous to warrant a finding that the county had failed in its duty to properly maintain this county highway and that such failure was a cause of this accident. The hill, curve, two dips, rise over the culvert and finally the two holes in the pavement formed such a combination of hazards that even a careful driver might lose control of his car because of these circumstances. The marks on the road indicated that Dekowski was caused to lose control of his car by the two holes in the pavement. The situation in *Kane* v. *County of Cayuga* (254 App. Div. 613) was quite comparable. In that case there was a bump in the road and closely adjacent a hole from three to six inches in depth and from two to three feet across. We held that situation to present a question of fact as to defendant's negligence. Nor can we here say as matter of law that plaintiff's intestate was guilty of contributory negligence. His speed was not unreasonable and the bump over the culvert into the two holes in the pavement, one of them seven inches deep, might well have been found to be the sole cause of his losing control of his car, and out of control the car would run for some distance before stopping. Also it was error for the trial court to exclude the evidence of the previous accident at this same point in the road. (*Quinlan* v. *City of Utica*, 11 Hun, 217; affd., 74 N. Y. 603.)

The judgment should be reversed upon the law, with costs to the appellant to abide the event, and a new trial granted.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Judgment reversed on the law, with costs to appellant to abide the event, and a new trial granted.