CHARLES KHOURY, as Administrator of the Estate of NICHOLAS KHOURY, Deceased, Respondent, v. COUNTY OF SARATOGA et al., Appellants, Impleaded with Others.

MOSES CARMA, by LOUIS G. CARMA, His Guardian ad Litem, Respondent, v. COUNTY OF SARATOGA et al., Appellants, Impleaded with Others.

LOUIS G. CARMA, Respondent, v. COUNTY OF SARATOGA et al., Appellants, Impleaded with Others.

(Argued May 1, 1935; decided May 21, 1935.)

*John W. Nichols* for County of Saratoga, appellant.

386

Beecher S. Clother for County of Warren, appellant.

Lawrence B. McKelvey, Brenton T. Taylor and James J. McNaughton for Town of Moreau, appellant.

C. E. Fitzgerald, James McPhillips and J. Edward Singleton for City of Glens Falls, appellant.

*Walter A. Chambers* and *Walter A. Fullerton* for respondents.

CRANE, Ch. J. The bridge over the Hudson river at Glens Falls has been found to be a nuisance as maintained on the day that Nicholas Khoury met his death, November 3, 1932. On that day Charles Izzo and Agnes D. Izzo were crossing the bridge in an automobile, when the car skidded on the ice, ran up on the sidewalk, killing Nicholas Khoury and injuring Moses Carma. The ice was formed from spray dashing up from the falls below. The dangerous character of the place was due not simply to the ice, but because the ice was on the bridge only,

all the rest of the highway and approaches being dry. Consequently, one ran onto the ice without previous warning or notice. Evidence was given of previous accidents due to the same cause and of propositions made to the authorities to remedy it. Sometimes the roadway was sanded. On the night in question there were no lights or warning signals and no sand. True the ice had not formed for a sufficient length of time to give notice to the city, if this were a negligence case pure and simple. The court treated the action as one in nuisance due to the condition of the bridge during the winter season which rendered the place so near to the falls more hazardous than the approaching highways. All parties had known of this danger for a long time.

Within the authorities I think the court was justified in this treatment of the facts.

Nuisance growing out of negligence is at times so combined with negligence that any attempt to separate them is a useless task. " In these and like situations, the danger being a continuing one, is often characterized as a nuisance, though dependent upon negligence." (McFarlane v. City of Niagara Falls, 247 N. Y. 340, 344; Koehler v. City of New York, 262 N. Y. 74, 77; Taylor v. City of Albany, 264 N. Y. 539; Klepper v. Seymour House Corp., 246 N. Y. 85.) The insistence, therefore, of the appellants that this case should have been tried in negligence and not nuisance is of little point. If the negligence depended solely on the failure to warn travelers of the ice on the night in question, there could be no recovery, as it had not been there long enough to have furnished notice to the city, but this is not the only claim of the plaintiffs. The continued gathering of ice from spray, not rain or snow, so that this was the only dangerous spot on the highway, was a condition the authorities had faced for some years and had done nothing about it. That it was dangerous to the public at such times is

evident and amply proved. Was it a public nuisance? This was a question of fact for the court or jury.

The main question on this appeal is the liability of the respective defendants, which are the city of Glens Falls, the town of Moreau, the county of Warren and the county of Saratoga. The city and town do not seriously dispute their liability, provided negligence or nuisance be established, but the counties claim that no duty to maintain this bridge rested upon them.

The liability of town and county for negligence in the care of highways is entirely statutory. So we turn to the statutes.

The bridge in question is a county line bridge, the southerly end being in the town of Moreau, Saratoga county, and the northerly end being in the city of Glens Falls, Warren county, the Hudson river forming the boundary line between the two counties. This bridge was constructed pursuant to section 250 of the Highway Law (Cons. Laws, ch. 25), during the year 1913, jointly by the town of Moreau and the city of Glens Falls, each paying one-half of the total cost of said construction. Following the completion of the bridge and pursuant to section 251 of the Highway Law, Warren county paid the city of Glens Falls one-sixth of the total cost of said construction, and Saratoga county paid to the town of Moreau one-sixth of the same. The bridge is not located *in* any single town or municipality. It spans the Hudson river, which not only separates the town of Moreau from the city of Glens Falls, but is also the dividing line between the two counties. It is not located in either county. The Highway Law, section 250, provides for such a bridge.

" The towns of this state, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public or free bridges constructed over streams or other waters within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their

boundaries, except between the counties of Westchester and New York; and when such bridges are constructed over streams or other waters forming the boundary line of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses. When such bridges are constructed over streams or other waters forming the boundary line between a city of the third class and a town, such city and town shall be liable each to pay its just and equitable share of the expenses for the construction, maintenance and repair of such bridges. Except as otherwise provided by law, a city of the third class shall be deemed a town for the purposes of this article. Each of the counties of this state shall also be liable to pay for the construction, care, maintenance, preservation and repair of public bridges lawfully constructed over streams or other waters forming its boundary line, not less than one-sixth part of the expense of construction, care, maintenance, preservation and repair, and, except in a county containing a portion of the Adirondack park, the whole of such expenses of public bridges lawfully constructed or to be constructed over streams, or waterways, intersecting county roads."

Section 33, subdivision 1, gives the duties of the County Superintendent of Highways: " Have the general charge of all highways and bridges within his * * * county and see that the same are improved, repaired and maintained, as provided by law, and have the general supervision of the work of constructing, improving and repairing bridges and town highways in his * * * county."

Subdivision 2: " Visit and inspect the * * * bridges in * * * his * * * county, at least once in each year."

Subdivision 5: " Approve plans and specifications and estimates for the erection and repair of bridges, * * * *"

Note that the duty here placed upon counties is in approximately the same language as that given to towns

and cities, "shall be liable to pay the expenses for the construction and repair of its public or free bridges."

At common law a town was not liable for the negligence of its Highway Superintendent; this liability is purely statutory. We, therefore, find section 74 of the Highway Law imposing this liability in these words: "Every town shall be liable for all damages to persons or property sustained by reason of any defect in its highways or bridges, existing because of the neglect of any town superintendent of such town."

This bridge is not solely a town bridge; it is a county bridge also, within the wording of section 250, above quoted, making the counties liable for one-sixth each for its care and maintenance. The duty then is as much on the counties as on the town and city.

As before stated, the counties' liability for neglect of any such duty is likewise statutory, so that we find in section 6 of the County Law (Cons. Laws, ch. 11) this provision: "When, by law, a county has charge of the repair or maintenance of a road, highway, bridge or culvert, the county shall be liable for injuries to persons or property sustained in consequence of such road, highway, bridge or culvert being defective, out of repair, unsafe, dangerous or obstructed existing because of the negligence of the county, its officers, agents or servants. A civil action may be maintained against the county to recover damages for any such injury; but the county shall not be liable in such action unless a written claim for such damages, verified by the oath of the claimant, containing a statement of the place of residence with reasonable certainty, and describing the time when, the particular place where and the circumstances under which the injuries were sustained, the cause thereof and, so far as then practicable, the nature and extent thereof, shall within three months after the happening of the accident or injury or the occurrence of the act, omission, fault or neglect out of which or on account of which the claim

arose, be served upon the county clerk or chairman of
the board of supervisors. No action shall be commenced
upon such claim until the expiration of three months
after the service of such notice."

As the duty of care and maintenance of this county
line bridge is placed upon the city, town and counties
in the same or similar language, and the liability of town
and county for neglect of duty is fixed by statute, there
is but one conclusion, and that is that all are jointly
and severally liable for damage resulting from failure to
maintain properly; they are joint tort feasors. The
counties are liable for not less than one-sixth each and
the town and city for their just and equitable share of the
balance. Payment by one of more than its share or pro-
portion can be recovered in a proper proceeding, if
necessary. (*St. John* v. *Andrews Institute*, 192 N. Y. 382;
*Clapp* v. *Town of Ellington*, 87 Hun, 542; affd., 154
N. Y. 781.)

In *Augustine* v: *Town of Brant* (249 N. Y. 198, 205) this
court said, " The modern tendency is against the rule of
non-liability. (Borchard, Government Liability in Tort,
*supra*, p. 258.) Liability for highway negligence has been
imposed by statute upon towns (Highway Law, § 75)
and counties (County Law, § 6)."

The County Law, section 68, says: " The board [of
supervisors] shall provide for the care, maintenance,
preservation and repair of any draw or other bridge
intersecting the boundary line of counties or towns, which
bridge is by law a joint charge on such counties or
towns, or on the towns in which it is situated." In *Matter
of Town of Saratoga* (160 App. Div. 60), the Appellate
Division directed the town and not the county to erect
such a bridge in the first instance. I do not find that
this case came to this court. The question of liability
for negligence in maintenance was not presented in that
decision and it might very well be that, as some one
municipality had to do the work, the cost being shared,

the towns could do it as well as the counties. Since that decision, moreover, section 6 of the County Law has been added.

In each case, the judgment below should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments affirmed.